Shpigel & Associates, P.C.
110 Wall Street
New York, NY 10005
Tel (718) 280-5434
Fax (646) 355- 0242
E-mail: ishpigel@iselaw.com

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

ZAP CELLULAR, INC. D/B/A AMP CELLULAR,

                                    Plaintiff,

        -Against-

ARI WEINTRAUB, MORTON WEINTRAUB, ESTI
DRESDNER, STEVE WEINSTOCK and MAZAL TECH
MEDIA, INC.,

                                  Defendants.

-----------------------------------------------------------------------X

**Docket #: 1:15-cv-6723**
ECF CASE

<u>JURY DEMANDED</u>

        Plaintiff ZAP CELLULAR, INC. D/B/A AMP CELLULAR, by and through its attorneys

SHPIGEL AND ASSOCIATES, P.C., file this complaint against defendants ARI WEINTRAUB,

MORTON WEINTRAUB, ESTI DRESDNER, and MAZAL TECH MEDIA, INC.

("Defendants"). Plaintiff alleges the following based on personal knowledge as to themselves and

their own acts, and as to all other matters upon information and belief, based upon the

investigation made by and through their attorneys. Plaintiff believes that substantial additional

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for

discovery.

## THE PARTIES

1. Plaintiff ZAP CELLULAR INC. D/B/A AMP CELLULAR ("Amp Cellular") is a domestic business corporation within the State of New York. Amp Cellular is in the business of selling cellular phone plans and/or minutes to end-users in Israel.

2. Defendant ARI WEINTRAUB ("A. Weintraub") is an individual residing in Kings County, New York.  A. Weintraub is a former officer and agent of Amp Cellular and was at all relevant times an officer and agent of MAZAL TECH MEDIA, INC.

3. Defendant MORTON WEINTRAUB ("M. Weintraub") is an individual residing in Kings County, New York. M. Weintraub is an officer or director of Mazal Tech Media, Inc.

4. Defendant ESTI DRESDNER ("Dresdner") is an individual residing in the State of New Jersey. Dresdner is an officer or director of Mazal Tech Media, Inc.

5. Defendant STEVE WEINSTOCK (Weinstock) is an individual residing in Kings County, New York. Steve Weinstock is an officer or director of Mazal Tech Media, Inc.

6. Defendant MAZAL TECH MEDIA, INC. ("Mazal Tech") is a domestic business corporation within the State of New York.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to federal question jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. §1030(a)(2).

8. Venue of the following claims is laid in the district pursuant to 28 U.S.C. § 1391(b)(2) and (3) because four of the Defendants are situated in the Eastern District of New York and a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of New York.

## FACTUAL ALLEGATIONS

9. Amp Cellular is an international telecommunications company with offices in Jerusalem, New York, and London. Amp provides telecom products and services to consumers. It is the leading provider of cellular products and services in Israel.

10. Customers who purchase wireless services through Amp must sign a service contract and provide Amp with their payment information. Amp Cellurar's customers authorize it to automatically process their payments at the end of each billing cycle.

11. Amp's customer payment information is secured and encoded within an Authorize.Net account, a service provider that facilitates merchant transactions over the internet.

12. Amp's customers receive an itemized statement containing usage and billing information via email approximately seven (7) to twelve (12) days after the close of the billing cycle. The billing cycle begins on the first day of the month and ends on the last day of the month. A day or two after customers receive their itemized bill, customers' payments are automatically processed.

13. Amp Cellular uses a third party vendor to process customers' payments. From approximately May 2013 until after the August 2013 billing, Amp Cellular contracted with Mazal Tech to perform this service.

14. During the course of the business relationship between Amp and Mazal Tech, Amp authorized Mazal to access customer payment information through Authorize. Net, and to use this information to process customers' payment information.

15. At the end of each billing cycle, Amp Cellular sent statements to customers and informed Mazal Tech how much to charge the customers. And Mazal Tech charged customers accordingly.

16. Subsequently, Mazal Tech deposited customer's payments into a Mazal Tech Media, Inc., bank account (the "Mazal Tech Account") which was solely dedicated to transactions performed on behalf of and for the benefit of Amp.

17. Mazal Tech Account was controlled and operated solely by Jacob Yarmish, an officer of Amp.

18. During this time, A. Weintraub, who was the founder and Chief Executive Officer of Mazal Tech, also served as Chief Executive Officer and Operations Manager of Amp Cellular.

19. During this time, A. Weintraub was a minor shareholder of Amp Cellular, and held 20% of Amp Cellular shares.

20. In the course of his duties as Chief Executive Officer for Amp Cellular, A. Weintraub had access to accounts, passwords, and other administrative information belonging to Amp Cellular. A. Weintraub knew passwords and login information solely because of his employment position.

21. Amp Cellular's customer lists and customer credit card information was held within a secured computer and/or server located in or near Chicago, Illinois, and could be accessed via an internet connection accompanied by the proprietary security access codes.

22. Amp Cellular's customer payment information was secured and encoded within an Authorize.Net account, a service provider that facilitates merchant transactions over the internet.

23. Amp Cellular's customer lists and customer payment information are a proprietary compilation of information maintained to facilitate the business of Amp Cellular. The information was not publicly known, is not generally known in the industry, was not

published, and was not copyable from any readily available source. The information gave Amp Cellular a business advantage over competitors.

24. At all relevant times, only Amp Cellular had the authority to and granted access to Mazal Tech to process Amp Cellular's customer payments for Amp Cellular services.

25. Amp Cellular and Mazal Tech discontinued their business relationship by mutual agreement, after Mazal Tech processed Amp Cellular Customer's credit cards for the August 2013 billing cycle.

26. Mazal Tech was not authorized to process the credit cards of Amp Cellular customers after the August 2013 billing.

27. In or about September, 2013, A. Weintraub was relieved of his position as Chief Executive Officer at Amp Cellular.

28. On or about October 10, 2013, A. Weintraub was given his final payment disbursal for his services to Amp Cellular as Chief Executive Officer.

29. A. Weintraub, M. Weintraub, and Dresdner developed a scheme to defraud Amp Cellular customers and preclude Amp Cellular from receiving monies it earned for services rendered.

30. Either shortly before or shortly following his departure from Amp Cellular, A. Weintraub, M. Weintraub, and Dresdner opened a merchant bank account which was under their exclusive control.

31. Upon information and belief, Defendants opened the merchant bank account with full knowledge that it would be used as a depository for illicitly gained monies.

32. In or about October or November 2013, A. Weintraub assisted by M. Weintraub, Steve Weinstock and Dresdner, accessed the corporate files of Amp Cellular and pilfered the personal information and credit card information of the customers of Amp Cellular.

33. On or about November 25, 2013, Mazal Tech billed Amp Cellular customers for Amp Cellular services attributable to the month of September 2013, in the amounts that were on their respective Amp Cellular bills ("Unauthorized Billing 1").

34. The proceeds of Unauthorized Billing 1 were deposited into the bank account created by A. Weintraub, M. Weintraub, Steve Weinstock and Dresdner.

35. Amp Cellular did not authorize Mazal Tech to affect billing for Amp Cellular services attributable to the month of September 2013.

36. On or about December 4, 2013, Mazal Tech billed Amp Cellular Customers for Amp Cellular services attributable to the month of October, 2013 ("Unauthorized Billing 2").

37. Upon belief, the proceeds of Unauthorized Billing 2 were deposited into the bank account created by A. Weintraub, M. Weintraub, Steve Weinstock and Dresdner.

38. Amp Cellular did not authorize Mazal Tech to affect billing for Amp Cellular services attributable to the month of October, 2013.

39. Many of the charges to Amp Cellular customers within Unauthorized Billing 1 and Unauthorized Billing 2 were dishonored by the customers' creditors for, upon belief, insufficient funds or similar reasons.

40. A. Weintraub assisted by M. Weintraub, Steve Weinstock and Dresdner then attempted to bill the same Amp Cellular customers whose charges were dishonored in an attempt to obtain more money. Defendants were successful in obtaining additional money from Amp Cellular's customers through this scheme.

41. A. Weintraub, M. Weintraub, Steve Weinstock and Dresdner continued to charge Amp Cellular customers up to at least January 2014

42. A. Weintraub continued to wrongly represent both himself and Mazal Tech as being authorized agents of Amp Cellular in connection with these subsequent charges.

43. Amp Cellular's service records for the months of September and October 2013 show that Amp Cellular was entitled to bill its customers for a combined total in excess of eighty thousand dollars ($80,000) for its services.

44. Amp Cellular has not received the money it had duly earned for services provided for the months of September and October 2013.

45. On or about January 29, 2014, Amp Cellular authorized a communication to its customers asking them to contact their credit card (or analogous) companies in order to report as fraudulent the charges of Unauthorized Billing 1 and Unauthorized Billing 2.

46. Following this, A. Weintraub accessed an external Amp Cellular email server and sent out an email stating that the January 29, 2014 communications were a mistake.

47. Amp Cellular has since taken efforts to discredit the improperly sent communication to its clients and restore the trust of its customers.

48. Amp Cellular's reputation with its clients has been drastically and irreparably harmed as a result of Defendants' actions.

## COUNT ONE

(Civil Violation of the Computer Fraud and Abuse Act ("CFAA") pursuant to 18 U.S.C. § 1030(a)(2) as against A. Weintraub)

49. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim herein.

50. 18 U.S.C. § 1030(a)(2) imposes liability upon an individual that "intentionally accesses a protected computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer".

51. 18 U.S.C. § 1030(g) provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."

52. 18 U.S.C. § 1030 (c)(4)(A)(i)(I) concerns a violation of the section which causes "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value".

53. After the August, 2013 billing, Amp Cellular and Mazal Tech ceased any business relationship by mutual agreement and it was agreed that Mazal Tech did not have any authorization to access information owned, possessed, or compiled by Amp Cellular.

54. As of September 2013, A. Weintraub was relieved of his position at Amp Cellular.

55. At all relevant times, Amp Cellular owned, possessed, or compiled confidential information, including customer credit card information, on a computer and/or computer servers which were used in or affected interstate or foreign commerce or communication; as such, these computers and/or servers are "protected computer[s]" under the CFAA. The information owned, possessed, or compiled by Amp Cellular existed on these computers and/or servers which were located in or around Chicago, Illinois, and these computers and/or servers were used to bill Amp Cellular customers across the United States and in Israel, thus affecting interstate or foreign commerce.

56. On or about November 25, 2013, on or about December 4, 2013, and at some point prior to or within January, 2014, A. Weintraub, without any authorization, intentionally used confidential passwords and login information to access a computer and/or servers containing confidential information owned, possessed, or compiled by Amp Cellular. A. Weintraub used this access to obtain credit card information of customers of Amp Cellular and to charge these customers for services provided by Amp Cellular. A. Weintraub had these charges deposited in a bank account opened by himself, M. Weintraub, and Dresdner.

57. As an actual and proximate result of A. Weintraub's conduct, Amp Cellular suffered damage and loss within a 1-year period aggregating at least $5,000 in value. Amp Cellular had to respond to A. Weintraub's offenses by expending significant time and resources to investigate the unauthorized charges, investigate vulnerabilities in the security of the computer system, and re-secure the computer system. Amp Cellular's corporate "goodwill" was severely damaged and its customers' trust in the corporation was irreparably harmed; the total diminution in value of the corporate "goodwill" is estimated to be in excess of $1,000,000.

58. The foregoing offenses conducted by A. Weintraub caused Plaintiff to expend money, to lose money, lose a great deal of the value of Plaintiff's monetary entitlements or expectations, and these offenses harmed Plaintiff's business reputation and caused other consequential, incidental and special damages.

**COUNT TWO**

(Civil Violation of the Computer Fraud and Abuse Act ("CFAA") pursuant to 18 U.S.C. § 1030(a)(5)(C) as against A. Weintraub)

59. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim herein.

60. 18 U.S.C. § 1030(a)(5)(C) imposes liability upon an individual that "intentionally accesses a protected computer without authorization, and as a result of such conduct causes damage and loss."

61. 18 U.S.C. § 1030(g) provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."

62. 18 U.S.C. § 1030 (c)(4)(A)(i)(I) concerns a violation of the section which causes "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value".

63. After the August 2013 billing, Amp Cellular and Mazal Tech ceased any business relationship by mutual agreement and it was agreed that Mazal Tech was to cease its services to Amp Cellular for it was no longer authorized to access information owned, possessed, or compiled by Amp Cellular.

64. As of September, 2013, A. Weintraub was relieved of his position at Amp Cellular.

65. At all relevant times, Amp Cellular owned, possessed, or compiled confidential information, including customer credit card information, on a computer and/or computer servers which were used in or affected interstate or foreign commerce or communication; as such, these computers and/or servers are "protected computer[s]" under the CFAA. The information owned, possessed, or compiled by Amp Cellular existed on these computers and/or servers which were located in or around Chicago, Illinois, and these computers

and/or servers were used to bill Amp Cellular customers for their usage in Israel, thus affecting interstate or foreign commerce.

66. On or about November 25, 2013, A. Weintraub, without any authorization, intentionally used confidential passwords and login information to access a computer and/or servers containing confidential information owned, possessed, or compiled by Amp Cellular. A. Weintraub used this access to obtain credit card information for customers of Amp Cellular and to charge these customers for services provided by Amp Cellular. A. Weintraub had these charges deposited in a bank account opened by himself, M. Weintraub, and Dresdner.

67. On or about December 4, 2013, A. Weintraub, without any authorization, intentionally used confidential passwords and login information to access a computer and/or servers containing confidential information owned, possessed, or compiled by Amp Cellular. A. Weintraub used this access to obtain credit card information for customers of Amp Cellular and to charge these customers for services provided by Amp Cellular. A. Weintraub had these charges deposited in a bank account opened by himself, M. Weintraub, and Dresdner.

68. At some point prior to or within January, 2014, A. Weintraub, charged customers for services provided by Amp Cellular with the information he previously obtained without any authorization, and by using confidential passwords and login information to access a computer and/or servers containing confidential information owned, possessed, or compiled by Amp Cellular. A. Weintraub had these charges deposited in a bank account opened by himself, M. Weintraub, and Dresdner.

69. As an actual and proximate result of A. Weintraub's conduct, Amp Cellular suffered damage and loss within a 1-year period aggregating at least $5,000 in value. Amp Cellular had to respond to A. Weintraub's offenses by expending significant time and resources to investigate the unauthorized charges, investigate vulnerabilities in the security of the computer system, and re-secure the computer system. Amp Cellular's corporate "goodwill" was severely damaged and the community's trust in the corporation was irreparably harmed; the total diminution in value of the corporate "goodwill" is estimated to be in excess of $1,000,000.

70. The foregoing offenses conducted by A. Weintraub caused Plaintiff to expend money, to lose money, lose a great deal of the value of Plaintiff's monetary entitlements or expectations, and these offenses harmed Plaintiff's business reputation and caused other consequential, incidental and special damages.

## COUNT THREE
(Common Law Misappropriation of Trade Secrets as Against A. Weintraub)

71. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim herein.

72. Amp Cellular's customer credit card information was a trade secret under the laws of New York. The customer credit card information was a compilation of information for use in the business of Amp Cellular which facilitated the charging of customers for services provided by Amp Cellular. The compilation of customer credit card information was proprietary to Amp Cellular and was kept confidential. The information was not publicly known, is not generally known in the industry, was not published; and was not copyable from any readily available source. To access the information, a user needed authorization from Amp Cellular, password information, and login information.

73. On or about November 25, 2013, on or about December 4, 2013, and at some point prior to or within January, 2014, A. Weintraub, without any authorization, intentionally used confidential passwords and login information to access a computer and/or servers containing confidential information owned, possessed, or compiled by Amp Cellular. A. Weintraub used this access to obtain and misappropriate credit card information of customers of Amp Cellular and to charge these customers for services provided by Amp Cellular. A. Weintraub had these charges deposited in a bank account opened by himself, M. Weintraub, Steve Weinstock and Dresdner.

74. As an actual and proximate result of A. Weintraub's conduct, Amp Cellular suffered damages and lost revenue. A. Weintraub, M. Weintraub, Steve Weinstock and Dresdner collected monies earned by Amp Cellular, totaling in excess of $80,000.00. Amp Cellular had to respond to A, Weintraub's offenses by expending significant time and resources to investigate the unauthorized charges, investigate vulnerabilities in the security of the computer system, and re-secure the computer system. Amp Cellular's corporate "goodwill" was severely damaged and the community's trust in the corporation was irreparably harmed; the total diminution in value of the corporate "goodwill" is estimated to be in excess of $1,000,000.

75. A. Weintraub, M. Weintraub, Steve Weinstock and Dresdner were illicitly enriched by use of the misappropriated trade secret information to deposit funds into an account created by them.

**COUNT FOUR**
(Common Law Aiding and Abetting Misappropriation of Trade Secrets as M. Weintraub, Steve
Weinstock and Dresdner)

76. Plaintiff hereby incorporates by reference all of the allegations set forth above as though
fully set forth verbatim herein.

77. Amp Cellular's customer credit card information was a trade secret under the laws of
New York. The customer credit card information was a compilation of information for
use in the business of Amp Cellular which facilitated the charging of customers for
services provided by Amp Cellular. The compilation of customer credit card information
was proprietary to Amp Cellular and was kept confidential. The information was not
publicly known, is not generally known in the industry, was not published; and was not
copyable from any readily available source. To access the information, a user needed
authorization from Amp Cellular, password information, and login information.

78. On or about November 25, 2013, on or about December 4, 2013, and at some point prior
to or within January, 2014, A. Weintraub, without any authorization, intentionally used
confidential passwords and login information to access a computer and/or servers
containing confidential information owned, possessed, or compiled by Amp Cellular. A.
Weintraub used this access to obtain and misappropriate credit card information of
customers of Amp Cellular and to charge these customers for services provided by Amp
Cellular. A. Weintraub had these charges deposited in a bank account opened by himself,
M. Weintraub, and Dresdner.

79. Defendants M. Weintraub, A. Weintraub, Steve Weinstock and Dresdner substantially
assisted in the misappropriation of trade secrets as part of their scheme to illicitly collect
monies earned by Amp Cellular. Knowing that Mazal Tech no longer had any

professional association with Amp Cellular, M. Weintraub, Steve Weinstock and Dresdner opened a merchant bank account under their exclusive control and the control of Mazal Tech for the express and known purpose of collecting monies earned by Amp Cellular. The existence of this merchant account substantially assisted in the misappropriation of trade secrets by providing the depository for the illicitly gained monies, without which A. Weintraub would have been unable to execute the scheme.

80. As an actual and proximate result of Defendants' conduct, Amp Cellular suffered damages and lost revenue. Defendants collected monies earned by Amp Cellular, totaling in excess of $80,000. Amp Cellular had to respond to these offenses by expending significant time and resources to investigate the unauthorized charges, investigate vulnerabilities in the security of the computer system, and re-secure the computer system. Amp Cellular's corporate "goodwill" was severely damaged and the community's trust in the corporation was irreparably harmed; the total diminution in value of the corporate "goodwill" is estimated to be in excess of $1,000,000.

81. A. Weintraub and/or the Defendants were illicitly enriched by use of the misappropriated trade secret information to deposit funds into an account created by them.

### COUNT FIVE
(Common Law Breach of Fiduciary Duty as Against A. Weintraub)

82. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim herein.

83. Prior to his termination in September, 2013, Chief Executive Officer A. Weintraub was an agent and fiduciary of Amp Cellular. During his employment, he was subject to several duties to Amp Cellular, including the duty of loyalty. A. Weintraub was under the duty not to use confidential knowledge acquired in his employment in competition with his

principal – this duty exists as well after the employment is terminated as during its continuance.

84. In violation of his duties, on or about November 25, 2013, on or about December 4, 2013, and at some point prior to or within January, 2014, A. Weintraub, without any authorization, intentionally used confidential passwords and login information to access a computer and/or servers containing confidential information owned, possessed, or compiled by Amp Cellular. A. Weintraub used this access to obtain and misappropriate credit card information of customers of Amp Cellular and to charge these customers for services provided by Amp Cellular. A. Weintraub had these charges deposited in a bank account opened by himself, M. Weintraub, and Dresdner.

85. A. Weintraub thereby interfered with Amp Cellular's affairs with its customers and absconded with the monies attributable to Amp Cellular.

86. As an actual and proximate result of A. Weintraub's conduct, Amp Cellular suffered damages and lost revenue. Defendants collected monies earned by Amp Cellular, totaling in excess of $80,000. Amp Cellular had to respond to these offenses by expending significant time and resources to investigate the unauthorized charges, investigate vulnerabilities in the security of the computer system, and re-secure the computer system. Amp Cellular's corporate "goodwill" was severely damaged and the community's trust in the corporation was irreparably harmed; the total diminution in value of the corporate "goodwill" is estimated to be in excess of $1,000,000.

87. A. Weintraub and/or the Defendants were illicitly enriched by use of the misappropriated trade secret information to deposit funds into an account created by them.

## COUNT SIX
(Common Law Aiding and Abetting a Breach of Fiduciary Duty as against M. Weintraub, Dresdner, and Mazal Tech)

88. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim herein.

89. Prior to his termination in September, 2013, Chief Executive Officer A. Weintraub was an agent and fiduciary of Amp Cellular. During his employment, he was subject to several duties to Amp Cellular, including the duty of loyalty. A. Weintraub was under the duty not to use confidential knowledge acquired in his employment in competition with his principal – this duty exists as well after the employment is terminated as during its continuance.

90. In violation of his duties, on or about November 25, 2013, on or about December 4, 2013, and at some point prior to or within January, 2014, A. Weintraub, without any authorization, intentionally used confidential passwords and login information to access a computer and/or servers containing confidential information owned, possessed, or compiled by Amp Cellular. A. Weintraub used this access to obtain and misappropriate credit card information of customers of Amp Cellular and to charge these customers for services provided by Amp Cellular. A. Weintraub had these charges deposited in a bank account opened by himself, M. Weintraub, Steve Weinstock and Dresdner.

91. A. Weintraub thereby interfered with Amp Cellular's affairs with its customers and absconded with the monies attributable to Amp Cellular.

92. Defendants M. Weintraub and Dresdner substantially assisted in A. Weintraub's breach of his fiduciary duties as part of their scheme to illicitly collect monies earned by Amp Cellular. Knowing that Mazal Tech no longer had any professional association with Amp

Cellular, A. Weintraub, M. Weintraub, Steve Weinstock and Dresdner opened a merchant bank account under their exclusive control and the control of Mazal Tech for the express and known purpose of collecting monies earned by Amp Cellular. The existence of this merchant account substantially assisted in the breach of A. Weintraub's fiduciary duty by providing the depository for the illicitly gained monies, without which A. Weintraub would have been unable to execute the scheme.

93. As an actual and proximate result of Defendants' conduct, Amp Cellular suffered damages and lost revenue. Defendants collected monies earned by Amp Cellular, totaling in excess of $80,000. Amp Cellular had to respond to these offenses by expending significant time and resources to investigate the unauthorized charges, investigate vulnerabilities in the security of the computer system, and re-secure the computer system. Amp Cellular's corporate "goodwill" was severely damaged and the community's trust in the corporation was irreparably harmed; the total diminution in value of the corporate "goodwill" is estimated to be in excess of $1,000,000.

94. A. Weintraub and/or the Defendants were illicitly enriched by use of the misappropriated trade secret information to deposit funds into an account created by them.

### COUNT SEVEN
(Common Law Conversion)

95. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim herein.

96. Plaintiffs had duly earned and had rightful claim to title of the funds that Defendants converted.

97. Defendants exercised unauthorized dominion and control over Plaintiff funds by stealing and refusing to return the monies.

98. Defendants had no legal or equitable rights to Plaintiff's funds.

99.  By virtue of the foregoing, the Defendants exercised acts of unauthorized dominion over Plaintiff's monies resulting in denial of Plaintiff's clear, uncontroverted, and unequivocal right to such monies, thereby greatly damaging and injuring the Plaintiff.

100.     As a direct and proximate result of the aforesaid conduct, Plaintiff has suffered damages.

## COUNT EIGHT
(Common Law Conspiracy)

101.     Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim herein.

102.     As set forth previously, Defendants committed numerous torts against Plaintiff including, among other things, misappropriation of trade secrets, aiding and abetting misappropriation of trade secrets, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conversion.

103.     Defendants intentionally agreed to steal and assist in stealing confidential Amp Cellular information so that they could charge Amp Cellular clients and deposit the money into an account over which A. Weintraub and perhaps other Defendants had control.

104.     These Defendants committed numerous intentional, overt acts in furtherance of this conspiracy, specifically the theft and use of confidential Amp Cellular client information and the opening of an account to deposit illicitly acquired monies.

105.     As a direct and proximate cause of the conspiracy, Plaintiffs have suffered damages.

## COUNT NINE
### (Common Law Unjust Enrichment)

106.     Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim herein.

107.     As a result of Defendants' actions, they were unjustly enriched.

108.     The action of the Defendants were at the Plaintiff's expense because such actions caused the theft of over eighty thousand dollars ($80,000).

109.     Defendants have not returned the illicitly obtained monies despite Plaintiff's demands.

110.     Defendants had no legal or equitable rights to the aforesaid monies as set forth in detail above.

111.     By virtue of the foregoing, the Defendants were unjustly enriched due to their acts of unauthorized dominion over the aforesaid monies and information.

112.     Equity and good conscience demand that Defendants and each of them be required to provide funds in a sum of money representing compensatory damages in a sum to be determined equal to at least the aforesaid sum of eighty thousand dollars ($80,000), plus consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, ZAP CELLULAR, INC. D/B/A AMP CELLULAR, respectfully request that the Court:

(a) Order, upon the basis of a Jury Verdict at the time of trial, that Defendants pay Plaintiff compensatory and consequential damages in an amount as yet to be determined, as to which the Plaintiff presently requests $80,000 for compensatory damages;

(b) Order, upon the basis of Jury Verdict at the time of trial, that Defendants pay Plaintiffs damages for the injured reputation of Amp Cellular in the amount of one million dollars ($1,000,000);

(c) Order that Defendants pay Plaintiffs costs of this action, including reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c);

(d) Order that Defendants pay Plaintiffs any and all damages sustained, arising from the foregoing wrongful and unlawful acts of Defendants;

(e) Order that Plaintiffs be awarded their costs and reasonable attorney's fees incurred in connection with the institution and prosecution of this civil action;

(f) Order that one or more of the Defendants, as the Jury may determine, pa Plaintiffs punitive damages;

(g) Order such other and further relief as justice may require.

## DEMAND FOR A JURY TRIAL

Plaintiff ZAP CELLULAR, INC. D/B/A AMP CELLULAR hereby demands a jury for all issues for which they have a right to trial by jury.

Dated: Brooklyn, New York
      November 23, 2015

Shpigel & Associates, P.C.

By: *Irina Shpigel*
    Irina Shpigel, Esq.
    *Attorney for Plaintiff*
    110 Wall Street
    New York, New York 10005
    Phone (718) 280-5434
    Fax (646) 355-0242
    E-Mail: ishpigel@iselaw.com