UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ZAP CELLULAR, INC. d/b/a AMP
CELLULUAR,

                    Plaintiff,                    **MEMORANDUM & ORDER**
                                                          15-CV-6723 (PKC) (VMS)

              - against -

ARI WEINTRAUB, MORTON WEINTRAUB,
ESTI DRESDNER, STEVE WEINSTOCK,
MAZAL TECH MEDIA, INC.,

                    Defendants.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

        Plaintiff Zap Cellular, Inc. ("Zap Cellular") initiated this action on November 23, 2015, alleging two civil violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, against Defendant Ari Weintraub ("A. Weintraub"), in addition to six pendent state law claims, collectively asserted against all Defendants.[1] (Complaint ("Compl."), Dkt. 1, ¶¶ 49–112.) On September 8, 2017, in a second amended answer ("SAA"), Defendant A. Weintraub asserted a counterclaim and brought a third-party complaint against Third-Party Defendants Jacob Yarmish ("J. Yarmish"), A and Y Sales and Marketing, Inc. ("A&Y"), Mazal Tech Media, Inc. ("Mazal Tech"), Chana Yarmish ("C. Yarmish"), Michael Yarmish ("M. Yarmish"), Topline Contracting, Inc. ("Topline") (collectively ("Third-Party Defendants")), and the unknown entities of John Does

---

[1] The Court notes that, contrary to Plaintiff's assertion that the Court has jurisdiction over this action solely pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1030(a)(2) (Compl., Dkt. 1, ¶ 7), the Court only has jurisdiction over Plaintiff's CFAA claims against Defendant Weintraub under that federal statute. The Court is exercising supplemental jurisdiction over Plaintiff's state law claims against the remaining Defendants pursuant to 28 U.S.C. § 1367(a), as those claims "derive from a common nucleus of operative fact" as the federal claims and therefore "form part of the same case or controversy." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (internal citations omitted).

1

1–100 and ABC Companies 1–100. (SAA, Amended Counterclaim, and Third-Party Complaint[2], Dkt. 84.) Currently pending before the Court is the joint summary judgment and dismissal motion of Plaintiff and Third-Party Defendants, seeking dismissal of all of Defendant A. Weintraub's counterclaims. (Plaintiff and Third-Party Defendants' Motion for Summary Judgment ("Pl. & TPD Mot."), Dkt. 137-1.) The Court construes the motion as a motion to dismiss pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1), and as a motion to strike the complaint pursuant to FRCP 12(f), and, for the reasons contained herein, the Court finds that it lacks subject matter jurisdiction over Defendant A. Weintraub's counterclaims and third-party complaint and dismisses them in full.

As an initial matter, the Court explains its decision to construe Plaintiff and Third-Party Defendants' motion not as one seeking summary judgment. Though styling their motion as such, the motion relies on the alleged deficiencies in the pleadings and not on the summary judgment record. It is therefore more appropriately construed as an omnibus motion to dismiss for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1), and motions to dismiss and strike pleadings for failure to comply with the Federal Rules of Civil Procedure, pursuant to FRCP 12(b)(6) and FRCP 12(f). As the Honorable Joseph F. Bianco found in *Dolce v. Suffolk County*:

> The following discussion relies as much on the deficiencies in the complaint as on the summary judgment record. [Plaintiff and Third-Party Defendants] styled [their] motion as one for summary judgment, but the Court may dismiss on the basis of the pleadings alone. . . . To the extent that dismissal is based on the complaint alone, that result is particularly appropriate here because [the parties have] failed to . . . cite[] to the record at all in [their] filings with this Court.

No. 12-CV-108 (JFB) (WDW), 2014 WL 655371, at *3 (E.D.N.Y. Feb. 20, 2014) (internal citations omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), for proposition that

---

[2] Hereafter, references to the SAA include all three filings by A. Weintraub.

2

"[FRCP] 56(e) [] requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial"), *aff'd*, 599 F. App'x 15 (2d Cir. 2015); *see also IMS Health Inc. v. Sorrell*, No. 07-CV-188 (JGM), 2008 WL 2483299, at *2 (D. Vt. June 17, 2008); *Moses v. Air Afrique*, No. 99-CV-541 (JG), 2000 WL 306853, at *3 (E.D.N.Y. Mar. 21, 2000) (construing Defendant's "motion for summary judgment for lack of subject matter jurisdiction to be a motion to dismiss pursuant to [FRCP] 12(b)(1)"). Moreover, "[t]he existence of federal subject matter jurisdiction [] is determined by what is pleaded in the complaint . . . [and o]n a motion to dismiss, a court must accept as true all material factual allegations in the complaint concerning subject matter jurisdiction." *Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 423 (E.D.N.Y. 2019) (citing *AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1055 (2d Cir. 1993); *Broich v. Inc. Vill. Of Southampton*, 650 F. Supp. 2d 234, 241 (E.D.N.Y. 2009)).

Because Plaintiff and Third-Party Defendants' motion is essentially a motion to dismiss, and because the parties rely on the alleged facts as set out in the pleading papers, the Court will set out the facts as alleged in the Complaint and the SAA. *Cf. Burton v. Label*, 344 F. Supp. 3d 680, 687 n.1 (S.D.N.Y. 2018).

## BACKGROUND

### I. Plaintiff Zap Cellular's Complaint

Plaintiff Zap Cellular filed this case on November 23, 2015, against Defendants A. Weintraub, Morton Weintraub ("M. Weintraub"), Esti Dresdner, Steve Weinstock, and Mazal Tech. (Compl., Dkt. 1.) Plaintiff is "an international telecommunications company" that "provides telecom products and services to consumers. It is the leading provider of cellular products and services in Israel." (*Id.* ¶ 9.) Plaintiff secures its customer payment information within an Authorize.Net account, and uses a third-party vendor to process payments from

customers. (*Id.* ¶¶ 11, 13.) From about May 2013 until August 2013, it contracted with Mazal Tech to provide this service, including authorizing Mazal Tech to access customer payment information through Authorize.Net and to charge for services rendered by Zap Cellular. (*Id.* ¶¶ 13–15.)

A. Weintraub, the Chief Executive Officer ("CEO") of Mazal Tech, prior to his termination, was also CEO and Operations Manager of Plaintiff Zap Cellular, and held 20% of the shares of Plaintiff, which allowed him access to Plaintiff's accounts and other sensitive administrative information, including customer lists and payment information stored on Authorize.Net. (*Id.* ¶¶ 18–22.) After the August 2013 billing cycle, Plaintiff and Mazal Tech agreed to discontinue their business relationship. (*Id.* ¶ 25.) Thereafter, in September 2013, A. Weintraub's position as CEO of Plaintiff was terminated. (*Id.* ¶ 27.)

Following his termination, A. Weintraub schemed with Defendants M. Weintraub, Esti Dresdner, and Steve Weinstock to defraud Plaintiff's customers by illegally accessing Plaintiff's corporate files, and opening a merchant bank account to deposit Plaintiff's September and October 2013 billing into an account affected by Mazal Tech, without authorization. (*Id.* ¶¶ 29–38.) Although many of the charges were "dishonored by the customers' [credit card companies]," Defendants billed those customers again and "were successful in obtaining additional money from [Plaintiff's] customers through this scheme," and continued to charge Plaintiff's customers until at least January 2014, when Plaintiff sent a communication to its customers asking them to contact their credit card companies to report the charges as fraudulent. (*Id.* ¶¶ 39–45.) Plaintiff alleges that Defendant A. Weintraub then "accessed an external [] email server [belonging to Plaintiff] and sent out an email stating that the January 29, 2014 communications were a mistake." (*Id.* ¶ 46.)

4

## II.     Defendant A. Weintraub's Answer, Counter-Claims, and Third-Party Complaint

Defendants initially answered Plaintiff's complaint on January 8, 2016 (Dkt. 14), but then filed an amended answer, counterclaim, and third-party complaint on January 28, 2016 (Amended Answer, Counterclaim, and Third-Party Complaint, Dkt. 17).  Defendants further amended that pleading on September 8, 2017.  (SAA, Dkt. 84.)  The amended counterclaim and third-party complaint were filed on behalf of Defendant A. Weintraub, "both individually and derivatively on behalf of [Plaintiff], A and Y Sales and Marketing, Inc., and Mazal Tech Media, Inc." (*See id.* at 8.)  Defendant A. Weintraub[3] asserted his claims against Plaintiff, and Third-Party Defendants J. Yarmish, A&Y, Mazal Tech, EZ Roamer LLC, Topline, E. Yarmish, C. Yarmish, M. Yarmish, and the unknown entities of John Does 1–100 and ABC Companies 1–100.  (*Id.* at 9 ¶ 4–10 ¶ 14.)

The SAA sets out additional facts and allegations.  J. Yarmish is the principal shareholder of Plaintiff Zap Cellular, which he incorporated in New York on or about May 19, 2010.  (*Id.* at 10 ¶¶ 15, 18.)  J. Yarmish hired A. Weintraub as CEO of Plaintiff.  (*Id.* at 10 ¶ 18.)  Part of the compensation package offered to A. Weintraub as CEO included 20% of the shares of Plaintiff.  (*Id.* at 10 ¶ 19.)  As a result of A. Weintraub's efforts and the increased volume of transactions, J. Yarmish and A. Weintraub created A&Y and Mazal Tech together.  (*Id.* at 11 ¶¶ 21–22.)  "At all times [referenced], A&Y and Mazal Tech [] have had common shareholders, directors, officers and personnel, have commingled funds, and have operated one and the same credit card processing business.  Accordingly, these entities are—for all intents and purposes—one organization." (*Id.* at 11 ¶ 23.)  Although A. Weintraub's "extensive efforts generated millions of dollars in income

---

[3] The Court notes that although Defendant A. Weintraub consistently wrote that he is "appear[ing] specially for the purpose of asserting" the counterclaim and third-party complaint (*see, e.g.*, SAA, Dkt. 84, at 9 ¶ 3), he has explicitly "consent[ed] to the personal jurisdiction of the Court" (*id.* at 2 ¶ 2).

5

to the Companies [i.e., A&Y and Mazal Tech]" (*id.* at 11 ¶ 25), and he "was at all times a twenty percent (20%) shareholder in the Companies," (*id.* at 11 ¶ 24), he "has never received any shareholder distributions based on his twenty percent (20%) equity interest" (*id.* at 11 ¶ 26). "Instead, throughout all this time, [J.] Yarmish was secretly misappropriating, looting and diverting the Companies' assets for personal and/or non-corporate purposes (*id.* at 11 ¶ 27), and "with the assistance of family members, personal friends[,] and business associates, [] made unlawful transfers of millions of dollars from the Companies' bank and/or merchant accounts" (*id.* at 11–12 ¶ 28). Those unlawful transfers were made into the personal bank accounts of the other Third-Party Defendants. (*Id.* at 12 ¶¶ 29–32.) In response to A. Weintraub's "repeated demands for his rightful twenty percent (20%) share of distributions, [J.] Yarmish repeatedly and knowingly misrepresented that the Companies' business [was] not making a profit . . . [but was], in fact, operating at a loss" (*id.* at 12 ¶ 33), and "refused to provide Weintraub with a full and complete accounting of the Companies' finances" (*id.* at 13 ¶ 36). The Companies also did not observe other corporate formalities or record-keeping requirements, as set out in New York law. (*Id.* at 13 ¶ 35.) J. Yarmish diverted profits from the Companies to EZ Roamer, and diverted assets by conveying a home to his mother, Third-Party Defendant C. Yarmish. (*Id.* at 13–14 ¶¶ 40–42.)

The causes of action in the counterclaim and third-party complaint include:

- Count One: Derivative Claim for Conversion against J. Yarmish, E. Yarmish, C. Yarmish, M. Yarmish, EZ Roamer, Topline, John Does 1–100, and ABC Companies 1–100 (*id.* at 14 ¶ 44–15 ¶ 51);

- Count Two: Derivative Claim for Unjust Enrichment Against J. Yarmish, E. Yarmish, C. Yarmish, M. Yarmish, John Does 1–100, EZ Roamer, Topline, and ABC Companies 1–100 (*id.* at 15 ¶ 52–16 ¶ 58);

- Count Three: Derivative Claim for Money Had and Received Against J. Yarmish, E. Yarmish, C. Yarmish, M. Yarmish, John Does 1–100, EZ Roamer, Topline, and ABC Companies 1–100 (*id.* at 16 ¶ 59–17 ¶ 65);

- Count Four: Derivative Claim for Breach of Fiduciary Duty Against Jacob Yarmish (*id.* at 17 ¶ 66–18 ¶ 73);

- Count Five: Direct Claim for Shareholder Distributions Against Plaintiff, A & Y, and Mazal Tech (*id.* at 18 ¶ 74–19 ¶ 76);

- Count Six: Direct Claim for Minority Shareholder Oppression Against J. Yarmish, Plaintiff, A & Y, and Mazal Tech (*id.* at 19 ¶ 77–20 ¶ 83);

- Count Seven: Direct Claim for Common Law Dissolution Against Plaintiff, A&Y, and Mazal Tech (*id.* at 20 ¶ 84–21 ¶ 88);

- Count Eight: Direct Claim for Dissolution Against Plaintiff, A and Y Sales and Marketing, Inc., and Mazal Tech Media Inc. (*id.* at 21 ¶¶ 89–93);

- Count Nine: Direct Claim for Appointment of Receiver Against Plaintiff, A&Y, and Mazal Tech (*id.* at 21–22 ¶¶ 94–96);

- Count Ten: Direct Claim for Fair Value of Shares Against Plaintiff, A&Y, and Mazal Tech (*id.* at 22 ¶¶ 97–98);

- Count Eleven: Direct Claim for Right to Inspect Corporate Books and Records Against Plaintiff, A&Y, and Mazal Tech (*id.* at 22 ¶ 99–23 ¶ 103);

- Count Twelve: Direct Claim for Accounting Against Plaintiff, A&Y, and Mazal Tech (*id.* at 23 ¶¶ 104–06);

- Count Thirteen: Direct Claim for Conversion Against J. Yarmish, E. Yarmish, C. Yarmish, M. Yarmish, John Does 1-100, EZ Roamer, Topline, and ABC Companies 1-100 (*id.* at 23 ¶ 107–24 ¶ 112);

- Count Fourteen: Direct Claim for Unjust Enrichment Against J. Yarmish, E. Yarmish, C. Yarmish, M. Yarmish, John Does 1-100, EZ Roamer, Topline, and ABC Companies 1-100 (*id.* at 24 ¶ 113–25 ¶ 118);

- Count Fifteen: Direct Claim for Money Had and Received Against J. Yarmish, E. Yarmish, C. Yarmish, M. Yarmish, John Does 1-100, EZ Roamer, Topline, and ABC Companies 1-100 (*id.* at 25 ¶¶ 119–23);

- Count Sixteen: Direct Claim for Breach of Fiduciary Duty Against J. Yarmish (*id.* at 26 ¶¶ 126–29); and

- Count Seventeen: Direct Claim for Fraudulent Conveyance Against J. Yarmish, E. Yarmish, C. Yarmish, M. Yarmish, John Does 1-100, EZ Roamer, Topline, and ABC Companies 1-100 (*id.* at 27 ¶¶ 128–30).[4]

### III. Plaintiff and Third-Party Defendants' Motion

On September 19, 2017, Plaintiff and Third-Party Defendants wrote to the Honorable Magistrate Judge Vera M. Scanlon, requesting an extension of time to serve and file a motion to dismiss the SAA, and submitted a proposed briefing schedule. (Dkt. 85.) Although that motion was granted on September 20, 2017 (*see* Sept. 20, 2017 Order), Plaintiff and Third-Party Defendants did not file a motion to dismiss, but instead filed an answer to the SAA on November 30, 2017 (Dkt. 93). After Judge Scanlon certified that discovery was complete (July 3, 2019 Order), on July 29, 2019, Plaintiff and Third-Party Defendants filed a motion for a pre-motion conference in anticipation of filing a proposed summary judgment and motion to strike, on the grounds that there is no genuine dispute as to any material fact relating to Plaintiff's CFAA claims; that the third-party complaint should be stricken as "not contingent on the main action"; that summary judgment is owed on Defendants' counterclaims because "a corporation does not owe fiduciary duties to its members or shareholders"; and that Defendant's *lis pendens* action "should be stricken as improper." (Dkt. 128.) The Court denied Plaintiff and Third-Party Defendants' motion for a conference on August 14, 2019 (Aug. 14, 2019 Order) and ordered the parties to

---

[4] The Court notes that A. Weintraub asserted some or all of these state law claims in a state court action against J. Yarmish and others that was ultimately dismissed because those claims had also been asserted here. (State Court Order, Dkt. 138-2 ("Action concerning the same matter has been pending [and] actively litigated in federal court prior to commencement of this action—same parties—same issues. Accordingly, [motion] for default is denied and cross[-motion] to dismiss is granted.").) This fact does not alter the Court's conclusion regarding the lack of jurisdiction over those claims in this forum.

propose a briefing schedule on August 23, 2019, which the parties did and the Court ordered (*see* Aug. 23, 2019 Order). The motion was fully briefed on December 30, 2019. (*See* Dkts. 137–39.)[5]

## LEGAL STANDARD

"A case may properly be dismissed for lack of subject matter jurisdiction pursuant to [FRCP] 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Doe v. Hass*, 427 F. Supp. 3d 336, 345 (E.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The party who asserts subject matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists." *Id.* (quoting *Mac Pherson v. State St. Bank & Tr. Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006)); *see also Makarova*, 201 F.3d at 113. "The existence of federal subject matter jurisdiction, furthermore, is determined by what is pleaded in the complaint." *Godinger Silver Art Ltd.*, 433 F. Supp. 3d at 423 (citation omitted); *see also Bryant v. Steele*, 93 F. Supp. 3d 80, 86 (E.D.N.Y. 2015) ("When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists[.] . . . The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." (internal quotation marks, citations, and alteration omitted) (quoting, *inter alia*, *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010))).

Federal subject matter jurisdiction may be conferred by federal question jurisdiction or diversity jurisdiction. Section 1331 of Title 28 provides district courts with federal question

---

[5] The Court notes, however, that Plaintiff and Third-Party Defendants' motion bears little resemblance to the motion that they described in their pre-motion conference letters to the Court. (*Compare* Pl. & TRD Mot., Dkt. 137-1, *with* Motion for Pre-Motion Conference (Dkt. 128).)

jurisdiction, or "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction exists when there is complete diversity between the parties, including "citizens of different States and in which citizens or subjects of a foreign state are additional parties," and "the matter in controversy exceeds the sum or value of $75,000." *Id.* § 1332(a).

Moreover,

> [e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

*Id.* § 1367(a). In other words, a district court has supplemental jurisdiction over state law claims that "derive from a 'common nucleus of operative facts.'" *Godinger Silver Art Ltd.*, 433 F. Supp. 3d at 424 (quoting *Promisel v. First American Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991), for proposition that "where common nucleus of operative facts is present, district courts commonly will exercise supplemental jurisdiction if considerations of judicial economy, convenience and fairness to litigants' weigh in favor of hearing the claims at the same time" (internal quotation marks and alterations omitted)).

A district court may also "decline to exercise supplemental jurisdiction over a claim" in four circumstances:

>    (1) the claim raises a novel or complex issue of State law,
>
>    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>    (3) the district court has dismissed all claims over which it has original jurisdiction, or

>   (4) in exceptional circumstances, [when] there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  "[T]he discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (internal quotation marks and citation omitted).  And even if one of those categories applies, the court "should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in [*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)]: economy, convenience, fairness, and comity." *Id.* (internal quotation marks and citations omitted) (collecting cases).  The Second Circuit has "emphasized both that, insofar as a § 1367(c) category is applicable, supplemental jurisdiction is a doctrine of discretion, not [the claiming party's] right, and that in providing that a district court may decline to exercise supplemental jurisdiction, § 1367(c) is permissive rather than mandatory." *Id.* (internal quotation marks, alterations, and citations omitted).

## DISCUSSION

In seeking dismissal of the third-party complaint, Plaintiff and Third-Party Defendants argue that (1) the Court should not exercise supplemental jurisdiction over any counterclaim in the third-party complaint, and (2) the manner in which Defendant A. Weintraub asserted these claims was procedurally defective.  (*See generally* Pl. & TPD Mot., Dkt. 137-1.)  For the reasons that follow, the Court agrees that it lacks subject matter jurisdiction over the claims asserted by Defendant A. Weintraub, and dismisses them on that basis.[6]

---

[6] Though both sides raise procedural issues in their briefing, the Court finds that the mechanism by which Plaintiff and Third-Party Defendants raised a subject matter jurisdiction challenge is not relevant to the Court's decision. "Federal Courts are courts of limited jurisdiction, and are obligated to confirm subject matter jurisdiction over matters before them." *Sanders v. New*

11

**I.      The Court Lacks Original Jurisdiction Over the Counterclaims**

The Court first observes that it does not have original subject matter jurisdiction over the SAA's seventeen counterclaims and third-party claims under 28 U.S.C. § 1331 (federal question jurisdiction), or 28 U.S.C. § 1332 (diversity jurisdiction). These claims unquestionably arise under state law. It is equally clear that diversity jurisdiction under 28 U.S.C. § 1332(a) is unavailable as to these state law claims. While Defendant and Third-Party Plaintiff A. Weintraub is either a resident of Israel or New York (*compare* SAA, Dkt. 84, at 8–9 ¶ 3, *with* Compl., Dkt. 1, ¶ 2), Third-Party Defendant J. Yarmish resides in New York and Israel (SAA, Dkt. 84, at 9 ¶ 4), and Third-Party Defendants Mazal Tech and Topline are companies incorporated in New York with their principle places of business in New York (*id.* at 9 ¶¶ 7, 9), which renders the third-party action not fully diverse under either scenario. *See* 28 U.S.C. § 1332(a).[7]

Plaintiff and Third-Party Defendants contend that the Court does not have supplemental jurisdiction over the third-party action because none of the seventeen claims brought by A. Weintraub in the SAA involve the company computer that he is accused of illegally accessing, and ten of his counterclaims "involve corporate governance issues" that have no connection to the alleged unlawful computer access, which undergirds the two federal CFAA anchor claims that provide the Court with jurisdiction in the main action. (*See* Pl. & TPD Mot., Dkt. 137-1, at 12 ("[Defendant A.] Weintraub's claims are not 'logically dependent' on the operative complaint . . . and should be dismissed."); Compl., Dkt. 1, ¶¶ 49–70.) Defendant A. Weintraub responds that his

---

*World Design Build, Inc.*, No. 19-CV-1071 (VSB), 2020 WL 1957371, at *2 n.2 (S.D.N.Y. Apr. 23, 2020) (collecting cases).

[7] The Court would also lack diversity jurisdiction if J. Yarmish is an American citizen residing abroad. *United Torah Educ. & Scholarship Fund, Inc. v. Solomon Cap. LLC*, 621 F. App'x 64, 64 (2d Cir. 2015) (summary order) ("Federal courts lack diversity jurisdiction over suits in which a United States citizen domiciled abroad is a party.").

12

counterclaims are "closely related to the subject matter of the main action," and are thus compulsory counterclaims under FRCP 13(a) "within the court's ancillary jurisdiction." (A. Weintraub Memorandum of Law in Opposition ("Resp."), Dkt. 138, at 3 (quoting *SiCap Indus., LLC v. Carpenter*, 501 F. Supp. 2d 335, 340 (N.D.N.Y. 2007)).)

For the reasons that follow, the Court finds that Defendant A. Weintraub's counterclaims are not compulsory, but are permissive pursuant to FRCP 13(b). The Court further holds that the counterclaims do not "form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), and that the Court, therefore, lacks subject matter jurisdiction over them. Finally, the Court finds that even if it had subject matter jurisdiction over A. Weintraub's counterclaims, it would decline to exercise it as the claims would substantially predominate over the original federal claims over which it has original jurisdiction.

## II.    The Counterclaims Are Not Compulsory

As Defendant A. Weintraub acknowledges, his counterclaims were inartfully pleaded. (*See* Resp., Dkt. 138, at 7.) However, based on the plain language of the SAA, the Court credits his assertion that Third-Party Defendants added to his counterclaims are just that–parties joined, and not parties impleaded for the purposes of indemnification pursuant to FRCP 14. (*Compare* SAA, Dkt. 84, at 8–26, *with id.* at 27–28 (describing relief sought), *and* Resp., Dkt. 138, at 7–8.)

For purposes of the jurisdictional inquiry, the Court must first determine the manner in which Defendant A. Weintraub asserted his counterclaims and joined the seven additional parties named in his Response. *See Jones v. Ford Motor Credit Co.*, 358 F. 3d 205, 209–10, 213–14 (2d Cir. 2004). A state law counterclaim will "automatically satisf[y]" the "common nucleus of operative fact" test "when it is a compulsory counterclaim under [FRCP] 13," thereby providing the Court with subject matter jurisdiction. *Sanders*, 2020 WL 1957371, at *2 (citing, *inter alia*, *Shahriar*, 659 F.3d at 245); *see also Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798,

13

810–11 (2d Cir. 1979) ("The general rule as applied to counterclaims is that a federal court has ancillary jurisdiction over compulsory counterclaims[.]").  A permissive counterclaim must independently meet the § 1367 jurisdictional criteria.  *See Jones*, 358 F.3d at 212.

> FRCP 13 defines a compulsory counterclaim as
>
> any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot obtain jurisdiction.

Fed. R. Civ. P. 13(a).  In contrast, a permissive counterclaim is any claim stated "against an opposing party . . . that is not compulsory."  Fed. R. Civ. P. 13(b).  Claims become "compulsory in the sense that if they are not raised, they are forfeited." *Jones*, 358 F.3d at 209 (citation omitted).  The question of

> [w]hether a counterclaim is compulsory or permissive turns on whether the counterclaim 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim,' and [the Second] Circuit has long considered this standard met when there is a 'logical relationship' between the counterclaim and the main claim.

*Id.* (citing *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).  While "the 'logical relationship' test does not require an absolute identity of factual backgrounds, the essential facts of the claims must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* (internal quotation marks, citations, and alterations omitted) (collecting cases).

The Court finds no logical relationship between the initial CFAA claims asserted by Plaintiff Zap Cellular, and the counterclaims A. Weintraub has brought against Plaintiff, its principal shareholder J. Yarmish, and J. Yarmish's family and associated businesses.  Defendant A. Weintraub argues that the following factual allegations are sufficient to establish a "logical

14

connection" between the claims in the main action and the third-party action, so as to make the counterclaims compulsory:

> [T]wo partners [J. Yarmish and A. Weintraub, who] owned and ran a company [Zap Cellular]; the minority partner [A. Weintraub], who was also the CEO, suspected the majority partner [J. Yarmish] of cooking the books and syphoning off money and insisted on reviewing the records; the majority partner fired the minority partner from his position as CEO, locked him out of the business and blocked his access to the financial records; the majority partner, anticipating a lawsuit, rushed to the courthouse and brought this action claiming that the minority partner had improperly accessed the company's computers and diverted company funds; the minority partner counterclaimed for the money that had been misappropriated by the majority partner.

(Resp., Dkt. 138, at 4–5.) Based on these allegations, Defendant A. Weintraub asserts that because Plaintiff is alleging, in addition to its CFAA claim, "claims of conversion, common law conspiracy and unjust enrichment against [A.] Weintraub's family members[,]" and "[t]he counterclaims similarly allege that [J.] Yarmish had used family members to loot the company[,] . . . [t]here is thus certainly a logical relationship[.]" (*Id.* at 5 (internal quotation marks and record citation omitted).) The Court rejects this argument.

At the outset, the Court notes that the question relevant to jurisdiction does not involve the relationship between the counterclaims and the supplemental state law claims asserted by Plaintiff in the main action, but the relationship between the *federal* CFAA claims asserted by Plaintiff that confer original jurisdiction on this Court and potentially A. Weintraub's counterclaims. *See Goldman Marcus, Inc. v. Goldman*, No. 99-CV-11130 (KMW), 2000 WL 297169, at *4 n.7 (S.D.N.Y. Mar. 21, 2000).

The CFAA is a criminal statute that also provides a private right of action to "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA]." 18 U.S.C. § 1030(g). In other words, any person who "intentionally accesses a computer without authorization or exceeds authorized access," as defined in the statute, may be held liable. *Id.* § 1030(a)(2); *see also id.*

15

§§ 1030(a)(4), (a)(5)(A).  The allegations at the heart of Plaintiff's claims are that "A. Weintraub, without any authorization, intentionally used confidential passwords and login information to access a computer . . . containing confidential information . . . and [then] used this access to obtain credit card information of customers," to charge and collect money he was not entitled to, resulting in a loss to Plaintiff.  (Compl., Dkt. 1, ¶¶ 55–57, 65–69.)

While Third-Party Defendant J. Yarmish, the primary shareholder of Plaintiff, may also have allegedly engaged in bad behavior and siphoned money from the company at the same time that Defendant A. Weintraub was allegedly doing so, that does not mean that the claims are logically related.  The counterclaims asserted do not contain any of the same legal elements needed to allege liability, and the evidence needed to prove each party's claims does not overlap.  *See Goldman Marcus, Inc.*, 2000 WL 297169, at *3 ("Among the relevant considerations are . . . overlapping proof between the jurisdiction-conferring claim and the counterclaims.").  Defendant A. Weintraub has not alleged that the claims and counterclaims involve the same money or funding stream, nor has he explained the relevance of his equity interest in Zap Cellular to any purported defense or allegation involving the CFAA claims.  An overlap in time and some parties is simply insufficient to form a logical relationship for purposes of finding a counterclaim compulsory.  *Cf. Burton*, 344 F. Supp. 3d at 704 ("[T]he counterclaims arise out of the *same* transaction or occurrence as the underlying claims, and have more in common than simply a former employer-employee relationship; both relate to the underlying circumstances that soured the parties' business relationship and competition for the same clients[.]" (emphasis added)); *Barrios v. S. & Caribbean Agencies, Inc.*, No. 18-CV-21550, 2019 WL 341178, at *1, 3 (S.D. Fla. Jan. 28, 2019) (finding that a CFAA violation alleged in a counterclaim was not compulsory in the context of Plaintiff's FLSA suit); *Frank N. Magid Assocs., Inc. v. Marrs*, No. 16-CV-198 (LRR), 2017 WL 3097257, at

16

*6 (N.D. Iowa July 20, 2017) (holding that counterclaims that "touch on work performed and compensation owed" are not compulsory to the claims of "tortious interference, misappropriation of trade secrets in violation of federal and state law, breach of fiduciary duty, [and] violation of the CFAA").

Accordingly, the Court finds that the counterclaims asserted by Defendant A. Weintraub are permissive and brought pursuant to FRCP 13(b).

### III. The Court Declines to Exercise Supplemental Jurisdiction Over the Counterclaims

Having determined that the counterclaims are permissive, the Court now must consider whether there is an independent basis for supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c). "A court with original federal jurisdiction over certain claims has supplemental jurisdiction over state law claims 'that are so related that they form part of the same case or controversy under Article III of the United States Constitution.'" *Bray v. City of New York*, 356 F. Supp. 2d 277, 282 (S.D.N.Y. 2014) (alteration omitted) (quoting 28 U.S.C. § 1367(c)); *see also Estate of Bruce v. City of Middletown*, 781 F. Supp. 1013, 1016 (S.D.N.Y. 1992) ("The limits of supplemental jurisdiction under § 1367 are the constitutional limits of subject-matter jurisdiction under Article III of the United States Constitution."). "[C]laims constitute the 'same case or controversy' when they arise from a 'common nucleus of operative fact.'" *Bray*, 356 F. Supp. 2d at 282 (citing *Jones*, 358 F.3d at 213–14; *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697 (2d Cir. 2000)); *see also Gibbs*, 383 U.S. at 725. "The existence of such a common nucleus may be established where either the 'facts underlying the federal and state claims substantially overlap or where presentation of the federal claim necessarily brings the facts underlying the state claim before the court.'" *Stafanovic v. Old Heidelberg Corp.*, No. 18-CV-2093 (LTS) (KNF), 2019 WL 3745657, at *2 (S.D.N.Y. Aug. 8, 2019) (alterations omitted) (quoting *Lyndonville Sav. Bank & Trust Co.*, 211 F.3d at 704).

17

For all of the reasons the Court discussed *supra* in the context of deciding whether the counterclaims are logically related to the initial jurisdiction-conferring federal claims asserted in Plaintiff's action, the Court finds that, even utilizing the slightly less restrictive standard for supplemental jurisdiction, the counterclaims do not arise from the same nucleus of operative facts as the federal claims. Again, the fact that the alleged bad behavior by both parties occurred at the same time, during the course of a business relationship, is insufficient to find enough common facts to constitute the same nucleus of facts. *Cf. LaChapelle v. Torres*, 37 F. Supp. 3d 672, 684 (S.D.N.Y. 2014) ("Expenses incurred for personal items on [Plaintiff's] behalf [and forming the factual basis for the counterclaim,] are unrelated to whether [the d]efendants violated [the p]laintiffs' intellectual property rights. That the parties had a business relationship with one another concerning [the plaintiff's] artwork is an insufficient basis to link these personal expenses to [p]laintiffs' [federal] claims."); *Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381, 393–94 (E.D.N.Y. 2007) (finding supplemental jurisdiction lacking when "the only factual link . . . is that the underlying events occurred during the course of plaintiff's employment by [defendant]"); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 468–69 (S.D.N.Y. 2008) ("As in the compulsory versus permissive counterclaim context, however, the employment relationship does not establish a 'common nucleus of operative fact' where it is the sole fact connecting Plaintiff's federal [employment] claims and [the defendant's] state law counterclaims.") (collecting cases); *Bu ex rel. Bu v. Benenson*, 181 F. Supp. 2d 247, 254 (S.D.N.Y. 2001) (finding that claims were not part of the same Article III case or controversy when the state law claims "involve[d] different rights, different interests, and different underlying facts" than the federal law claims).

Here, Third-Party Plaintiff A. Weintraub has failed to identify any fact showing any connection or overlap between his alleged illegal computer access and the alleged misdeeds of

18

Third-Party J. Yarmish or the other Third-Party Defendants. Indeed, A. Weintraub's own description of his argument reveals its inherent flaw: Plaintiff is alleging "claims of conversion, common law conspiracy and unjust enrichment against [A.] Weintraub's family members. . . . The counterclaims similarly allege that [J.] Yarmish had used family members to loot the company. . . . There is thus certainly a logical relationship[.]" (Resp., Dkt. 138, at 5 (internal quotation marks and citation omitted).) In other words, A. Weintraub's argument is that because he and Third-Party Defendants allegedly looted the same company, even if by different means and not in concert with each other, their claims stem from a common nucleus of operative facts. This is patently incorrect.[8]

Finally, even if the Court did have supplemental jurisdiction over Defendant A. Weintraub's counterclaims, it would decline to exercise that jurisdiction pursuant to Section 1367(c)(2). A district court is permitted to decline to hear claims without an independent basis for jurisdiction if the claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). That is exactly the scenario presented by this case:

> The trial of the claims in the complaint [in the main action] will focus on a brief period and on the interaction between the principal parties. Trial of the counterclaims will require an extensive review of the money taken out of the business by the [Third-Party Defendants] over a [multi-year] period. It would overwhelm the claim[s] over which the Court has original jurisdiction.

---

[8] At most, A. Weintraub's allegations about J. Yarmish's misconduct and their falling-out as business partners might be relevant to Plaintiff's motivation for filing the lawsuit—though this assumes that J. Yarmish was still involved in Zap Cellular at the time the lawsuit was filed or was involved in the decision to initiate the lawsuit—or to J. Yarmish's credibility should there be a hearing or trial at which he testifies. These tenuous and unsupported connections between the claims certainly do not satisfy the standard for the Court's exercise of supplemental jurisdiction.

*Burgess v. Omar*, 345 F. Supp. 2d 369, 372 (S.D.N.Y. 2004). Such a trial would undermine the values of economy, convenience, fairness, and comity articulated in *Gibbs*. *Cf. Catzin*, 899 F.3d at 85 (citing *Gibbs*, 383 U.S. at 726). For these reasons, the Court finds that it does not have supplemental jurisdiction over Defendant A. Weintraub's counterclaims and the claims asserted in his purported third-party complaint.

## CONCLUSION

For all of the reasons contained herein, the Court grants Plaintiff and Third-Party Defendants' motion and dismisses the counterclaims and purported third-party complaint asserted by Defendant A. Weintraub. The Third-Party Defendants are hereby dismissed from this case. The remaining parties to this matter are directed to file a joint pre-trial order ("JPTO"), in accordance with this Court's individual rules, within sixty (60) days of this Memorandum and Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2020
       Brooklyn, New York